UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SHANEL MOORE,

     Plaintiff,

vs.                                                                 Case No. 10-13037

                                                          HON. AVERN COHN

JEFFREY WEBER, individually,
MICHAEL OLCESE, individually,
WEBER & OLCESE, PLC and
ROBERT REZNICK,

     Defendants.
_____/


**MEMORANDUM AND ORDER**
**GRANTING DEFENDANTS' WEBER & OLCESE, P.L.C., JEFFREY WEBER, AND**
**MICHAEL OLCESE'S MOTION FOR SUMMARY JUDGMENT (Doc. 13)**

I.  Introduction

      This is one of several cases filed in this district regarding the debt collection

activities of defendants, the law firm of Weber & Olcese, P.L.C., Jeffrey Weber, Michael

Olcese, and Robert Reznick.  Each lawsuit, filed by the same plaintiff's counsel, is

based on the alleged improper actions of Robert Reznick and/or his company, Due

Process of Michigan, Inc. and/or its associates during the execution of an order to seize

property.[1]

      Plaintiff raises a host of claims against defendants under state and federal law.

---

      [1]The undersigned had one such prior case, Mawby v. Reznick, 09-10468.  In
Mawby, Weber & Olcese, P.L.C., Olcese, and Weber were dismissed by stipulation,
presumably as a result of a settlement.  The case later settled as to Reznick and was
closed.

Before the Court is a motion for summary judgment by Weber & Olcese, P.L.C., Jeffrey

Weber and Michael Olcese (collectively, "the law firm defendants").  For the reasons

that follow, the motion is GRANTED as to plaintiff's § 1983 claim.  This leaves only a §

1983 claim against Reznick.[2]

## II.  Background

### A.

Weber & Olcese ("W & O") is a Troy, Michigan law firm that provides debt

collection services to its clients.  Jeffrey Weber and Michael Olcese are the principals of

W & O.  Under Michigan law, a licensed court officer is authorized to seize a judgment

debtor's property to satisfy a judgment. In cases in which W & O resorts to actual

execution on a judgment instead of settlement, W & O often uses the services of

defendant Robert Reznick and his company, Due Process of Michigan, Inc.

Reznick is an approved court officer for various district and circuit courts in

Michigan.  In addition, he is a deputy for the Coleman Police Department, Village of

Morris Police Department, and City of Perry Police Department.  He is also deputized by

the Gladwin County Sheriff's Department and the Midland County Sheriff's Department.

Here, W & O obtained a default judgment against plaintiff Shanel Moore in the

amount of $4,487.67 on behalf of its client, Credit Acceptance Corporation.  W & O

submitted the standard SCAO request for an order to seize property to the 37th District

Court in Warren, Michigan.  The district court entered the order on June 13, 2007.  The

---

[2]At the hearing on defendants' motion, plaintiff's counsel stated that he would
dismiss the state law claims.  The Court then dismissed the state law claims per the
parties' stipulation.  Doc. 24.

order to seize property authorized a sheriff, deputy sheriff, or court officer to seize "personal property . . . includ[ing], but not limited to . . . money, wherever located" to satisfy the judgment.  Ex. 5.

B.

W & O assigned Reznick to serve the order and seize property.  Reznick assigned the order to another court officer.  The order was served on August 2, 2007 when two men knocked on plaintiff's apartment in Warren.  Plaintiff says that the men said they were Deputy Sheriffs and "in representation of Rob Reznick" and were there to seize property and assets.  Plaintiff says the men showed badges.  Although neither man identified themselves by name, it was later learned that one of the men was Tom Royal, since he singed the receipt given to plaintiff.  Royal is an independent contractor who does collection work for Due Process of Michigan.  Plaintiff testified at deposition that the men told her to come up with $2,500 or they were going to seize her belongings.  The men told her to call people she knew and ask for money and they would stay there while she made the calls.  She also testified that the men said if she if she did not come up with any money, they would take her belongings and her children's.

Plaintiff further testified that two more men showed up about 15 minutes later. These two men never identified themselves nor did they ever speak to plaintiff.

Eventually, plaintiff was able to get $1,500 wired from her mother which she gave to the men.  Plaintiff was told she needed to sign an agreement to make monthly $100 payments.  Plaintiff signed the agreement.  All of the men left and gave plaintiff

3

Reznick's business card, telling her to contact him to set up the payment plan.

The entire incident lasted about two hours.  Plaintiff testified that none of the men physically touched her or threatened her.  Plaintiff never had any contact with them again.

Plaintiff made two of her monthly payments, after speaking with Reznick on at least two occasions.

At some point thereafter, plaintiff settled her debt.  She never spoke to anyone at W & O about the service order or order to seize property.

Plaintiff then filed a multi-count complaint against defendants, as follows:

| I | Violation of 42 U.S.C. § 1983 (4th and 14th Amendment) |
| II | Conspiracy under state law |
| III | Trespass |
| IV | Fraud |
| V | Abuse of Process |
| VI | Intentional Infliction of Emotional Distress |
| VII | Intrusion |
| VIII | Conversion |
| IX | Extortion |

### III.  Summary Judgment

Summary judgment is appropriate when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  There is no genuine issue of

4

material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law."  In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).  In so doing, the Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995).

IV.  Analysis

A.  § 1983 Generally

Count I alleges violations of 42 U.S.C. § 1983 against defendants W & O, its principals, and Robert Reznick for "conspiring to and, in fact, violating Plaintiff's civil rights."  Complaint at ¶ 47.  Plaintiff further alleges that although private parties, W & O, Weber, and Olcese "are liable for their conspiracy with Defendant Robert Reznick, a state actor, to violate Plaintiff's constitutional rights and rights under state law."  Id. at ¶ 52.

"To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law."  Russo v. City of Cincinnati, 953 F.2d 1036 (6th Cir. 1992).  The elements of a claim are:  (1) the conduct at issue must have been

5

under color of state law; (2) the conduct must have caused a deprivation of constitutional rights; and (3) the deprivation must have occurred without due process of law. Nishiyama v. Dickson County, 814 F.2d 277, 279 (6th Cir. 1987).  As § 1983 is not itself a source of substantive rights, and only a method for vindicating federal rights elsewhere conferred, a plaintiff must set forth specific constitutional grounds for asserting a § 1983 claim.  Graham v. Connor, 490 U.S. 386, 393-94 (1989); Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979).  Plaintiff's claim fails for two reasons.

First, plaintiff has not established that the law firm defendants are state actors. For private litigants accused of acting "under color of law," a court must consider "the extent to which the actor relies on governmental assistance and benefits, whether the actor is performing a traditional governmental function, and whether the injury caused is aggravated in a unique way by the incidents of governmental authority."  Edmonson v. Leesville Concrete Co., 500 U.S. 614, 621-22 (1991).  While judicial actions are state actions, steps taken by the litigants to obtain a ruling from a court are generally not deemed to be state action.  Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 54 (1999); Polk County v. Dodson, 454 U.S. 312, 324-35 (1981)(holding that public defenders whose role is limited to performing a lawyer's traditional function as counsel to a defendant in a criminal proceeding is not a state actor under § 1983).

### B.  State Action

Another judge is this district recently considered whether the law firm defendants, as private entities had a sufficiently close relationship (i.e., through state regulation or contract) with the State of Michigan so that any action taken by them may be attributed

6

to the state.  The court concluded no such relationship existed, explaining:

> The Weber and Olcese Defendants were acting as counsel on behalf of a certain client when a Default Judgment and the Order to Seize Property were obtained with the state court.  There are no allegations by Rozewski that the action by the Weber and Olcese Defendants in obtaining such a judgment and order constitute a "state action."  Rozewski claims that the action of obtaining Reznick's services to enforce the Order to Seize Property constitutes a state action.  However, Rozewski has not submitted any legal authority that a law firm's action to obtain services to enforce an Order to Seize Property constitutes a "state action."  Michigan law allows a party to take steps to satisfy a judgment.  No state or municipality decision is involved in obtaining such services, other than the applicable statute.  There is no evidence that apart from the statutory fees for the services charged by Reznick, the Weber and Olcese Defendants have any other employment or contractual relationship with Reznick.  The Weber and Olcese Defendants cannot be held liable under a vicarious liability or respondeat superior theory for any actions by Reznick since no state action existed when the Weber and Olcese Defendants obtained the services of Reznick to satisfy the judgment.  A § 1983 action cannot lie against a municipality or, in this case, the law firm or its principals, under the theory of respondeat superior since the Weber and Olcese Defendants were not executing a policy or custom adopted by a state or municipality.  Monell, 436 U.S. at 695.  The Weber and Olcese Defendants' actions of obtaining Reznick's services cannot be connected to any state or municipal policy or custom.
>
> In addition, the individual Defendants, Weber and Olcese, also cannot be held liable under a supervisory liability theory in a § 1983 action because no such action is available for failure to prevent misconduct, absent a showing of direct responsibility by the supervisor for that improper action.  Rizzo v. Goode, 423 U.S. 362-373-77 (1976); Dunn v. State of Tennessee, 697 F.2d 121, 128 (1982).

Rozewski v. Weber, No. 10-13035, 2011 WL 3329777, *4-5 (E.D. Mich. Aug. 3, 2011).

The same is true here.  Plaintiff presents no legal authority for finding that the law firm defendants are state actors under § 1983.  As such, plaintiff's § 1983 fails.

### C.  Evidence of a Conspiracy

Secondly, plaintiff's § 1983 claim fails because she has not presented sufficient evidence to create a genuine issue of material fact as to whether there was a

conspiracy between the law firm defendants and Reznick.  Another judge in this district

considered this issue and, based on the same evidence presented in this case,

concluded a conspiracy claim did not exist.  The district court stated:

>        Presumably in an attempt to overcome this lack of vicarious liability,
> Plaintiff has alleged a claim for civil conspiracy–that W & O and its principals
> conspired with Reznick to violate Plaintiff's constitutional rights.  In order to
> prevail on a claim for conspiracy, Plaintiff must show that the private individual
> and a state official conspired to violate Plaintiff's rights.  To establish a claim of
> conspiracy, a party must demonstrate "a combination of two or more persons, by
> some concerted action, to accomplish a criminal or unlawful purpose or
> accomplish a lawful purpose by criminal or unlawful means."  Temborius v.
> Slatkin, 157 Mich. App. 587, 599 (1987).  "The agreement, or preconceived plan,
> to do the unlawful thing is the thing which must be proved." Id. at 600.
>        In this case, Plaintiff has failed to show any collusion or communication
> between W & O and Reznick to violate Plaintiff's rights.  Instead, Plaintiff's brief is
> rife with hyperbole, claiming that the law firm is aware that Reznick uses
> "terroristic methods" during the executions.  Plaintiff claims that W & O had
> knowledge of past complaints against Reznick and his company by judgment
> debtors.  However, even if that were true, it is insufficient to support a claim for
> conspiracy.  "Knowledge alone of tortious conduct is insufficient to prove a
> conspiracy agreement.  Knowledge of the planned tort must be combined with
> intent to aid in its commission.  An entity that engages in legitimate business with
> a party that is acting tortiously cannot be deemed a co-conspirator absent clear
> evidence of an agreement to join in the tortious conduct." In re Welding Fume
> Products Liability Litigation, 526 F. Supp 2d 775, 803 (N.D. Ohio 2007).

Bairactaris v. Weber, No. 10-10983, 2010 WL 4623875, * 2 (E.D. Mich. Nov. 4, 2010).

At best, plaintiff says that W & O, Weber, and Olcese were aware of complaints

about Reznick's company related to its collection activities.  In support of this assertion,

plaintiff relies on deposition testimony taken in 2010 from Reznick in a prior case,

Mawby (see n. 1, supra), in which Reznick testified that he talked extensively to Weber

and Olcese about "complaints" he received about his collection activities.  As explained

in the law firm defendants' papers, this deposition testimony is contradictory from

8

Reznick's earlier deposition testimony taken in 2007 in yet another similar case,

Rodriguez v. Weber, 07-12578, and therefore suspect.  That aside, knowledge alone is

not sufficient to show a conspiracy under § 1983.  Plaintiff has not made out a § 1983

claim against the law firm defendants.  Summary judgment is warranted.

       SO ORDERED.


                 S/Avern Cohn                   
                AVERN COHN
                UNITED STATES DISTRICT JUDGE


Dated:  August 16, 2011


I hereby certify that a copy of the foregoing document was mailed to the attorneys of
record on this date, August 16, 2011, by electronic and/or ordinary mail.

                 S/Julie Owens             
                Case Manager, (313) 234-5160